FILED
Nov 17, 2021
02:53 PM(CT)
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MEMPHIS

| | | |
|---|---|---|
| **WILLIE MAE LINDSEY,** | ) | **Docket No. 2021-08-0356** |
| **Employee,** | ) | |
| **v.** | ) | |
| **KELLOGG CO.,** | ) | **State File No. 26045-2021** |
| **Employer,** | ) | |
| **and** | ) | |
| **OLD REPUBLIC INS. CO.,** | ) | **Judge Allen Phillips** |
| **Carrier.** | ) | |

---

## EXPEDITED HEARING ORDER DENYING BENEFITS

---

The Court held an Expedited Hearing on October 27, 2021.[1] Ms. Lindsey requested medical and temporary disability benefits for an injury she alleged happened on March 21, 2021. Kellogg claimed the injury did not arise out her employment. For the following reasons, the Court agrees with Kellogg and denies Ms. Lindsey's request.

### History of Claim

Ms. Lindsey, who was the Safety Manager for Kellogg, testified her injury happened when she tripped over a dangling wire just inside a warehouse door. She said the wire hung from a spool resting on an overhead shelf, and when she tripped, the spool fell, knocking her into another shelf. She said she struck the right side of her body, injuring her neck and low back.

Ms. Lindsey reported to work on the next morning, Monday, March 22, and while cleaning her office, she moved a heavy television. When she did, she claimed she felt extreme pain in the same body parts that she injured the day before. She said Nicole Marshall, a Human Resources employee, was next door and heard her cry out. Ms. Marshall asked what happened, and Ms. Lindsey told her about moving the television. The two were then interrupted by another employee, who came to Ms. Marshall's office. At that time, Ms. Lindsey wrote a statement regarding the previous day's injury.

---

[1] The Court held the hearing via videoconference by agreement of the parties.

Kellogg offered differing testimony. Derrick Brewster, Kellogg's Plant Manager, testified Kellogg had decided to terminate Ms. Lindsey before March 21 due to poor job performance. The termination was scheduled for Friday, March 19, but when Kellogg could not coordinate the meeting, it was rescheduled to follow the weekly management meeting on March 22.

As Safety Manager, Ms. Lindsey participated in the management meeting. Mr. Brewster testified that Ms. Lindsey did not report the March 21 injury at the meeting, and she did not document any injury or unsafe conditions in a March 21 safety report for which she had responsibility. Balaji Kamalakannan[2] also testified that Ms. Lindsey neither mentioned her injury in the meeting nor did she appear injured.

As planned, Mr. Brewster and Ms. Marshall terminated Ms. Lindsey after the management meeting, and a separation notice listed "performance" as the reason. Mr. Brewster said it was in no way related to the alleged injury. Ms. Marshall did not testify.

After her termination, Ms. Lindsey reported the March 21 injury by giving Ms. Marshall the statement she wrote earlier that morning. In it, Ms. Lindsey said she was inspecting "Warehouse 5 or 6" when she tripped over a cord and a spool fell from the top shelf hitting her neck. She then said, "I picked it up but felt immediate pain in the neck area shooting down my arm and back." A First Report of Injury completed by Kellogg that day includes the same narrative. Ms. Lindsey also wrote in her statement that she "took Aleve from the first aid room" and continued to work. She concluded, "I wanted to resolve it on my own but this situation occurred and I needed to report it right away."

Ms. Lindsey's pain did not improve, and she asked for medical treatment. Kellogg provided a panel of physicians, from which Ms. Lindsey chose Dr. Stephen Waggoner. On March 31. Dr. Waggoner recorded the injury as Ms. Lindsey described it at the hearing, namely a falling spool knocked her into a shelf. Dr. Waggoner also noted Ms. Lindsey sustained a 2018 cervical spine injury while working for another employer, but her pain was "now much worse[.]"[3] He diagnosed cervical and lumbar spine injuries, significantly restricted Ms. Lindsey's activities, and said he would see her again in two weeks.

Meanwhile, Kellogg investigated Ms. Lindsey's allegations. Specifically, Mr. Brewster, Ms. Marshall, and Mr. Balaji inspected the warehouses that Ms. Lindsey described in her statement. They went to several because Ms. Lindsey did not identify the specific one. In every warehouse inspected, they found no loose wires, fallen spools, or any physical evidence of an unsafe condition.

---

[2] The parties referred to Mr. Kamalakannan as "Balaji" with his permission. The Court will as well.
[3] The correct date of the previous injury was later shown to be October 11, 2019, but the actual date is not relevant in context.

On April 20, Kellogg denied any further medical treatment with Dr. Waggoner and filed a "Notice of Controversy." As its basis, Kellogg contended the alleged injury did not arise out of the employment.

Ms. Lindsey then filed a Petition for medical and temporary disability benefits.[4] She wanted Kellogg to provide further medical treatment, preferably in Maryland where she now resides, and pay temporary disability benefits based on Dr. Waggoner's restrictions. On August 27, the Court set this Expedited Hearing.[5]

At the hearing, the parties submitted Dr. Waggoner's March 31 record and the letter with his causation opinion. Specifically, Kellogg provided Dr. Waggoner with records of Ms. Lindsey's treatment for the 2019 injury and an order of the Mississippi Workers' Compensation Commission documenting a settlement of Ms. Lindsey's claim for that injury. After reviewing the information, Dr. Waggoner, without elaboration, replied that both Ms. Lindsey's cervical and lumbar spine symptoms were "more than 50% related" to her injury at Kellogg.

The records from the 2019 injury were from Dr. Laverne Lovell, who first saw Ms. Lindsey on September 28, 2020. He recorded that she "hurt her back" when moving boxes and that she had been "fired" from her job where the injury occurred. He noted delays in treatment due to possible misdiagnoses and then COVID. Dr. Lovell noted Ms. Lindsey was then working at Kellogg and that her complaints had caused "pretty much a miserable state throughout all of this." He related two herniated cervical discs to the 2019 injury and recommended surgery.

Ms. Lindsey's previous employer approved the surgery, and on April 7, 2021, Dr. Lovell's office called her to schedule it. However, Ms. Lindsey wanted to wait until she received a COVID vaccination. The record documenting the April 7 call makes no mention of the March 21 injury.

On April 13, Ms. Lindsey returned to Dr. Lovell. He noted that she "was trying to get better with time and had basically been delaying [the] operation." Dr. Lovell also noted that "She is here today telling me a month ago she had a second injury at work where she tripped over some wires and fell against the person in front of her and then a spool that has wire curled on it came off of a rack and hit her in the back of the neck and shoulders." Ms.

---

[4] The Court consolidated both petitions for judicial economy.

[5] On October 12, Kellogg moved to continue the Expedited Hearing on grounds it did not receive a causation opinion from Dr. Waggoner until October 8, and it needed more time to obtain either an independent medical evaluation or depose Dr. Waggoner. Ms. Lindsey objected, arguing that Kellogg had the information it needed before it obtained Dr. Waggoner's opinion. The Court did not find good cause for a continuance because Kellogg's claim administrator did not send the letter requesting the doctor's causation opinion until October 5. However, the Court took final ruling on the matter under advisement to determine if the medical evidence presented at the Expedited Hearing justified a different result. Given the holding here, the Court need not address the continuance issue any further.

Lindsey told Dr. Lovell that, "due to the delay in reporting. . .she ended up being terminated[.]" Dr. Lovell said all of the history was "word of mouth from the patient."

The Mississippi order, dated June 18, 2021, memorialized a compromised settlement. Ms. Lindsey's former employer paid her a significant lump sum but disputed the alleged injury because she did not report it until six months after her termination. The order included Ms. Lindsey's assertion that she timely reported the injury, which she repeated at this hearing, stating that she provided notice shortly after the injury.

Kellogg argued that the facts of the Mississippi claim and this one are virtually identical, namely Ms. Lindsey reported questionable injuries at both employers only after being terminated. But Kellogg did not advocate late notice as its primary focus; instead, it questioned the actual occurrence of the incident.

The thrust of Ms. Lindsey's argument, as evidenced by her questioning of the witnesses, was that Kellogg accepted other claims despite the employee's late reporting. She asserted that she was fired because she reported an injury. She also noted Ms. Marshall's absence and that Kellogg did not invite her to participate in the inspection of the premises.

### Findings of Fact and Conclusions of Law

Ms. Lindsey must show at this Expedited Hearing that she would likely prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1) (2021). To prevail she must show her injury arose primarily out of her employment and that it was *caused by an incident identifiable by time and place of occurrence.* Tenn. Code Ann. § 50-6-102(14)(A) (Emphasis added).

As is its right, Kellogg investigated Ms. Lindsey's claim and then denied it based on the factual assertion that the alleged work accident did not occur as reported. *See Hawes v. McLane Co., Inc.,* 2021 TN Wrk. Comp. App. Bd. LEXIS 30, at *10 (Aug. 25, 2021). The Court agrees with Kellogg's position.

First, Kellogg found no physical evidence of the injury. Mr. Brewster, Mr. Balaji, and Ms. Marshall found no dangling wires, fallen spools, or other hazards supporting Ms. Lindsey's claim. The Court finds both Mr. Brewster and Mr. Balaji highly credible. They were calm, self-assured, confident, and forthcoming. *See Kelly v. Kelly*, 445 S.W.3d 685, 694-695 (Tenn. 2014) (discussing indicia of witness credibility). Mr. Balaji in particular responded to Ms. Lindsey's questions in a friendly manner, indicating no ill will towards her that would call into question his recollection of the events.[6]

---

[6] The Court notes Ms. Marshall's absence might be construed that her testimony would be adverse to Kellogg. Tennessee recognizes the "missing witness rule" which may apply when the evidence shows that a witness who was not called to testify knew about material facts, had a relationship with the party "that would naturally incline the witness to favor the party," and the witness was available to the process of the

Second, Ms. Lindsey's job required that she maintain an accurate safety report for March 21. The Court considers that an accurate report is particularly important when it documents a weekend shift and when the person charged with completing it bears responsibility for safety. Ms. Lindsey neither recorded any dangerous condition nor, more importantly, did she record her own injury.

Third, Ms. Lindsey did not report her injury or any unsafe condition in the management meeting on Monday morning. Likewise, she did not appear to be injured.

Fourth, Ms. Lindsey reported the incident after her termination. As Kellogg pointed out, this is akin to the late reporting of her claim against a previous employer. Similarities aside, the Court finds that the timing of Ms. Lindsey's reporting here is questionable standing on its own. Ms. Lindsey could have, and should have, included it in her safety report, and she had further opportunity to report the injury on March 22 before her termination. Importantly, though she contended she was terminated for reporting an injury, Kellogg had terminated her before she presented the handwritten statement.

Fifth, Ms. Lindsey's statements as to how the injury occurred are inconsistent. She testified at the hearing and told Dr. Waggoner that the spool fell on her neck and knocked her into a shelf. She told Dr. Lovell that she tripped and fell into someone else. She wrote in her statement that she felt pain when she picked up the spool. Not only do these inconsistencies give the Court pause, but they also call into question Dr. Waggoner's causation opinion based on the history given him. *See Moore v. Liberty Mut. Ins. Co.*, No. 02S01-9806-CH-00056, 1999 Tenn. LEXIS 396, at*9 (Tenn. Workers' Comp. Panel Aug. 23, 1999) (it stands to reason that a medical opinion will not be reliable if based on false medical history).

In summary, it is appropriate for a trial court to consider the strengths and weaknesses of the relevant evidence in determining whether an employee comes forward with sufficient evidence that they would prevail at trial. *Jones v. AT&T Services*, 2021 TN Wrk. Comp. App. Bd. LEXIS ____, slip op. at 5 (Nov. 8, 2021). The weaknesses of Ms. Lindsey's evidence lead the Court to conclude that she likely would not prevail at trial in establishing a specific incident arising out of her employment.

---

court. *In re Mattie L.*, 618 S.W.3d 335, 342 (Tenn. 2021). However, given the totality of the evidence, the Court does not find application of the missing witness rule would yield a different result.

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. Lindsey's request for benefits is denied at this time.

2. The Court sets a Status Hearing for **Wednesday, January 12, 2022, at 10:30 a.m. Central Time**. The parties must call 731-422-5263 or toll-free 855-543-5038 to participate in the Hearing.

**ENTERED November 17, 2021.**

_____Allen Phillips_____

**JUDGE ALLEN PHILLIPS**
**Court of Workers' Compensation Claims**

## APPENDIX

Exhibits:
1. Collective Medical Records of Drs. Waggoner and Lovell and Mississippi Workers' Compensation Commission Order
2. Physical Therapy Records from Maryland
3. First Report of Injury
4. Notice of Controversy
5. Ms. Lindsey's handwritten injury report
6. Ms. Lindsey's affidavit
7. Severance Letter
8. Severance Notification Packet

Technical record:
1. Petition for Benefit Determination—April 2, 2021
2. Petition for Benefit Determination—April 26, 2021
3. Dispute Certification Notice for April 2 petition
4. Dispute Certification Notice for April 26 petition
5. Request for Expedited Hearing
6. Transfer Order
7. Order of Consolidation
8. Employer's Pre-Hearing Submission
9. Motion for Continuance
10. Response to Motion for Continuance

**CERTIFICATE OF SERVICE**

I certify that a copy of this Order was sent as indicated on November 17, 2021.

| Name | Email | Service sent to: |
|---|---|---|
| Willie Mae Lindsey, Employee | X | wmlindsey@gmail.com |
| Thomas J. Smith, Employer's Attorney | X | tsmith@spicerfirm.com |

_Penny Shrum_

**Penny Shrum, Court Clerk**
Court of Workers' Compensation Claims